**Peter I. Ostroff, SBN 45718**
postroff@sidley.com
**Rollin A. Ransom, SBN 196126**
rransom@sidley.com
**Charlie J. Sarosy, SBN 302439**
csarosy@sidley.com
**SIDLEY AUSTIN LLP**
**555 West Fifth Street, Suite 4000**
**Los Angeles, California 90013**
**Telephone: +1 213 896-6000**
**Facsimile: +1 213 896-6600**

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; WARNER BROS. RECORDS INC.; WARNER MUSIC LATINA INC.; SONY MUSIC ENTERTAINMENT; SONY MUSIC ENTERTAINMENT US LATIN LLC; ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; ELEKTRA ENTERTAINMENT GROUP INC.; FUELED BY RAMEN, LLC; KEMOSABE RECORDS LLC; LAFACE RECORDS LLC; NONESUCH RECORDS INC.; WEA INTERNATIONAL INC.; ZOMBA RECORDING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PMD TECHNOLOGIE UG d/b/a YouTube-mp3; PHILIP MATESANZ; and DOES 1-10, <br><br> Defendants. | Case No.: 2:16-CV-07210 <br><br> **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT;** <br><br> 2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT;** <br><br> 3. **VICARIOUS COPYRIGHT INFRINGEMENT;** <br><br> 4. **INDUCEMENT OF COPYRIGHT INFRINGEMENT; AND** <br><br> 5. **CIRCUMVENTION OF TECHNOLOGICAL MEASURES** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs UMG Recordings, Inc.; Capitol Records, LLC; Warner Bros. Records Inc.; Warner Music Latina Inc.; Sony Music Entertainment; Sony Music Entertainment US Latin LLC; Arista Records LLC; Atlantic Recording Corporation; Elektra Entertainment Group Inc.; Fueled by Ramen, LLC; Kemosabe Records LLC; LaFace Records LLC; Nonesuch Records Inc.; WEA International Inc.; and Zomba Recording LLC (collectively, "Plaintiffs"), by and through their attorneys, hereby allege as follows:

## INTRODUCTION

1.      Plaintiffs are record companies that, along with their affiliated labels, create, manufacture, and/or distribute the vast majority of all recorded music legitimately produced and sold in the United States.  Defendants own and operate a website known as "YouTube-mp3" ("YTMP3"), which is located at the web address www.youtube-mp3.org.  YTMP3 is designed to infringe and facilitate the infringement of Plaintiffs' copyrighted sound recordings that are available on YouTube (www.youtube.com).  YTMP3 rapidly and seamlessly removes the audio tracks contained in videos streamed from YouTube that YTMP3's users access (these audio tracks consist largely of sound recordings owned by Plaintiffs), converts those audio tracks to an MP3 format, copies and stores them on YTMP3's servers, and then distributes copies of the MP3 audio files from its servers to its users in the United States, enabling its users to download those MP3 files to their computers, tablets, or smart phones.  All of this occurs without the authorization of Plaintiffs or of YouTube, which makes videos available to its users for viewing and listening online, but not for copying or downloading.

2.      By its conduct, YTMP3 directly infringes Plaintiffs' sound recordings.  It also provides the site and facilities and means for its users to engage in copyright infringement, while profiting from the infringement.  YTMP3 also materially contributes to the infringement by its users, of which it has knowledge.

3.      Capturing digital content streamed over the internet is known as "stream ripping."  Copyright infringement through stream ripping has become a major problem for Plaintiffs and for the recorded music industry as a whole.  From 2013 to 2015 alone, there has been a 50% increase in unauthorized stream ripping in the United States.

4.      YTMP3's conduct, and the conduct of its users that it enables and induces, infringes Plaintiffs' copyrights and other rights.  It also violates YouTube's Terms of Service.  In addition, on information and belief, YTMP3's unauthorized conversion, copying, storage, and distribution of Plaintiffs' copyrighted sound recordings is accomplished by YTMP3 unlawfully circumventing technological measures that YouTube has implemented to prevent the downloading or copying of content from the YouTube service.  By engaging in and facilitating the unlawful infringement of Plaintiffs' sound recordings, YTMP3 deprives Plaintiffs (and other copyright owners) of the benefits of their investment in these valuable works and interferes with and creates a substitute for legitimate streaming and download services that are authorized by Plaintiffs.

5.      The scale of Defendants' infringing activity is enormous.  Plaintiffs are informed and believe, and on that basis allege, that the YTMP3 website is one of the most visited sites in the world, has tens of millions of users, and is responsible for upwards of 40% of all unlawful stream ripping of music from YouTube in the world. Defendants have boasted that YTMP3 is the "easiest online service for converting videos to mp3," usable by virtually any internet-enabled device, including personal computers, tablets, and smart phones.  Defendants also admit that "the whole conversion process will be performed by our infrastructure and you only have to download the audio file from our servers."

6.      Defendants' unlawful conduct inflicts tremendous and irreparable damage on Plaintiffs' businesses, and erodes authorized sales and distribution of sound recordings through traditional and online channels.  Rampant copyright

infringement of sound recordings over the internet, including the massive infringement engaged in and enabled by websites such as YTMP3, has resulted in significant harm to the music industry, including to artists who rely on recorded music for their livelihood.  A recent survey found that 57 million persons in the United States are engaging in copyright infringement of sound recordings using unauthorized online services, including stream ripping services.

7.     At the same time Defendants are depriving Plaintiffs and their recording artists of the fruits of their labor, Defendants are profiting from the operation of the YTMP3 website.  Through the promise of illicit delivery of free music, Defendants have attracted millions of users to the YTMP3 website, which in turn generates advertising revenues for Defendants.  For example, Plaintiffs are informed and believe, and on that basis allege, that Defendants – working with services such as Google's "AdSense" program and Google's "DoubleClick" service – profit from third-party advertising that targets users based on the users' location (geo-targeting) or based on the users' prior internet browsing history (interest-based targeting).  Such targeted advertising maximizes the "click-through" rate of advertisements on the YTMP3 website (*i.e.*, the number of visitors to the site who then "click" on an advertisement appearing on the site), thereby generating substantial revenues and profits to Defendants through their operation of the website.

8.     Defendants' provision of an easy-to-use service for copyright infringement has caused and is causing Plaintiffs significant and irreparable harm.  Defendants' business unlawfully profits from copyright infringement and free rides on the creative efforts and investments of others.  Plaintiffs are entitled to preliminary and permanent injunctive relief to stop Defendants' ongoing violation of Plaintiffs' rights, and to damages.

## NATURE OF THE ACTION

9.     This is an action for copyright infringement under the Copyright Act of the United States, Title 17, United States Code §§ 101, *et seq*., and for violations of

the provisions of the Copyright Act that prohibit persons from circumventing technological measures designed to protect copyrighted works.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendants, including pursuant to Federal Rule of Civil Procedure 4(k)(2), for at least the following reasons: (1) Plaintiffs' claims arise under federal copyright law; (2) YTMP3 is dedicated exclusively to capturing, converting, and copying audio content that is maintained on a U.S.-based website, YouTube (www.youtube.com), which Defendants then distribute to users throughout the United States; (3) YTMP3 targets and attracts a substantial number of users in the United States (YTMP3 attracts more users from the United States than any other country); and (4) the effects of Defendants' unlawful conduct are felt in the United States, including in this District, where several Plaintiffs are located and/or maintain substantial business operations.

12.     Venue in this District is proper under 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400(a).

## THE PARTIES

### *Plaintiffs*

13.     Plaintiff UMG Recordings, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California.

14.     Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in Santa Monica, California.

15.     Plaintiff Warner Bros. Records Inc. is a Delaware corporation with its principal place of business in Burbank, California.

16.     Plaintiff Warner Music Latina Inc. is a Delaware corporation with its principal place of business in Miami, Florida.

17.    Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York, and has substantial business operations in this District.

18.    Plaintiff Sony Music Entertainment US Latin LLC is a Delaware limited liability company with its principal place of business in Coconut Grove, Florida.

19.    Plaintiff Arista Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

20.    Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

21.    Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

22.    Plaintiff Fueled by Ramen, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

23.    Plaintiff Kemosabe Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

24.    Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

25.    Plaintiff Nonesuch Records Inc. is a Delaware corporation with its principal place of business in New York, New York.

26.    Plaintiff WEA International Inc. is a Delaware corporation with its principal place of business in New York, New York.

27.    Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

28.    Plaintiffs UMG Recordings, Inc.; Capitol Records, LLC; Warner Bros. Records Inc.; Warner Music Latina Inc.; Sony Music Entertainment; Sony Music Entertainment US Latin LLC; Arista Records LLC; Atlantic Recording Corporation; Elektra Entertainment Group Inc.; Fueled by Ramen, LLC; Kemosabe Records LLC;

LaFace Records LLC; Nonesuch Records Inc.; WEA International Inc.; and Zomba Recording LLC are collectively referred to herein as "Plaintiffs."

29.     Plaintiffs, along with their affiliated labels, are the copyright owners or owners of exclusive rights with respect to the vast majority of copyrighted sound recordings sold in the United States.  Under the Copyright Act, Plaintiffs have, *inter alia*, the exclusive rights to reproduce their copyrighted works, distribute copies or phonorecords of their copyrighted works and perform them by means of a digital audio transmission to the public.  *See* 17 U.S.C. §§ 106(1), (3), (6).  Plaintiffs are also the owners of sound recordings protected under state law.

30.     In addition to manufacturing, distributing, licensing, and selling phonorecords in the form of CDs, vinyl records, and other tangible media, Plaintiffs distribute their sound recordings in the form of digital audio files delivered or performed over the internet through authorized services.  Plaintiffs and the legitimate services with which they work provide a wide variety of lawful ways for consumers to enjoy recorded music that is distributed and performed over the internet, including digital download and/or streaming services like Apple Music, iTunes, Google Play, Amazon, Rhapsody, Spotify, and many others.  Unlike Defendants' unauthorized and unlawful service, these services generally operate lawfully and pay Plaintiffs for sound recordings that they distribute or perform.

31.     Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and distribute sound recordings embodying their performances.  Plaintiffs, their employees, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of sound recordings to the public, including the authorized online sale, streaming, and distribution described above.

*Defendants*

32.     Defendant PMD Technologie UG ("PMD") is a German limited liability company organized and existing under the laws of Germany.  PMD, which is wholly owned by Defendant Philip Matesanz ("Matesanz"), describes itself as the owner and operator of YTMP3.

33.     On information and belief, Defendant Matesanz is a German citizen who lives in Germany.  On information and belief, Matesanz personally directs and participates in, and personally receives a direct financial benefit from, the conduct alleged herein.  Matesanz describes himself as the owner and sole employee of PMD, and thus is the ultimate owner and operator of YTMP3.

34.     Plaintiffs are informed and believe, and on that basis allege, that Defendants Does 1 through 10, along with Defendants PMD and Matesanz, own and/or operate YTMP3, or are otherwise responsible for and proximately caused and is causing the harm and damages alleged in this Complaint.  Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, and for that reason, sue such Defendants by such fictitious names.

35.     Defendants PMD, Matesanz, and Does 1-10 are collectively referred to as "Defendants."  Plaintiffs are informed and believe, and on that basis allege, that at all times relevant hereto, Defendants served as the agents of one another in infringing, or facilitating the infringement of, Plaintiffs' copyrights.

## THE YOUTUBE SERVICE

36.     YouTube (www.youtube.com) is an online video service.  It is also the largest on-demand music service in the world.  Every day, people watch and listen to hundreds of millions of hours of videos that are available on YouTube and generate billions of "views" of those videos.  Of those views, at least 30% are of music videos.

37.     YouTube is a streaming service – the music videos on the site can be listened to and viewed by users while they are connected to the internet, but the transmission of those videos does not result in a permanent copy of the music video

being made for offline access by the user.   Music videos and the sound recordings that they contain cannot lawfully be downloaded, copied, saved, or distributed by YouTube users.

38.     In its Terms of Service, YouTube strictly limits what users may do on the site, and with content that appears on YouTube.  Among other things, YouTube's Terms of Service impose the following prohibitions:

     a.     "You shall not copy, reproduce, distribute, transmit, broadcast, display, sell, license, or otherwise exploit any Content for any other purposes without the prior written consent of YouTube or the respective licensors of the Content."  (YouTube Terms of Service, ¶ 5(B));

     b.     "You agree not to circumvent, disable or otherwise interfere with security-related features of the [YouTube] Service or features that prevent or restrict use or copying of any Content or enforce limitations on use of the Service or the Content therein."  (YouTube Terms of Service, ¶ 5(C));

     c.     "You agree not to distribute in any medium any part of . . . the Content without YouTube's prior written authorization, unless YouTube makes available the means for such distribution through functionality offered by the [YouTube] Service (such as the Embeddable Player)."  (YouTube Terms of Service, ¶ 4(A)); and

     d.     "You agree not to access Content through any technology or means other than the video playback pages of the [YouTube] Service itself, the Embeddable Player, or other explicitly authorized means YouTube may designate."  (YouTube Terms of Service, ¶ 4(C))

39.     Plaintiffs are informed and believe, and on that basis allege as follows: YouTube has adopted and implemented technological measures to control access to content maintained on its site and to prevent or inhibit downloading, copying, or illicit distribution of that content.  YouTube maintains two separate URLs for any given

video file:  one URL, which is visible to the user, is for the webpage where the video playback occurs, and one URL, which is not visible to the user, is for the video file itself.  The second URL is generated using a complex (and periodically changing) algorithm – known as a "rolling cipher" – that is intended to inhibit direct access to the underlying YouTube video files, thereby preventing or inhibiting the downloading, copying, or distribution of the video files.

## DEFENDANTS' INFRINGING CONDUCT

40.     YTMP3 was designed and exists for one principal reason:  to profit from the unauthorized reproduction and distribution of the popular copyrighted recorded music that appears on YouTube, a substantial portion of which is owned or controlled by Plaintiffs.  YTMP3 accomplishes this goal by unlawfully removing the audio tracks from videos that appear on the YouTube service, converting them to MP3 files, copying those files to its servers, and then distributing those audio files to YTMP3 users in the United States in the form of downloadable MP3 audio files.

41.     Stream ripping has become a major threat to the music industry, functioning as an unlawful substitute for the purchase of recorded music and the purchase of subscriptions to authorized streaming services.  Stream ripping replaces lawful, revenue-generating streaming and downloads of recordings over the internet and sales of phonorecords in tangible media with the mass distribution of unauthorized copies, depriving copyright owners of compensation and enriching unlawful actors at copyright owners' and artists' expense.

42.     The scale of stream ripping, and the corresponding impact on music industry revenues, is enormous.  Plaintiffs are informed and believe, and on that basis allege, that tens, or even hundreds, of millions of tracks are illegally copied and distributed by stream ripping services each month.  And YTMP3, as created and operated by Defendants, is the chief offender, accounting for upwards of 40% of all unlawful stream ripping that takes place in the world.

43.     The reason for Defendants' success is straightforward:  Defendants have created a service that, through a few simple mouse clicks on a computer, generates infringing copies of Plaintiffs' sound recordings and distributes those infringing copies for free to any person who wants them.  Indeed, the YTMP3 home page – depicted in the figure below – promotes the simplicity and efficiency of this infringing service, touting that it is "the easiest online service for converting videos to mp3."




1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

44.     YTMP3's infringement of Plaintiffs' copyrighted work begins with a user who wants a copy of a song, at no cost.  The user goes to YouTube (www.youtube.com) and searches for a video with the desired song, an example of which is seen in the figure below.



45.     The user then simply copies the webpage address (or "URL") associated with the playback of that YouTube video (which appears at the top of the YouTube screen), goes to the interface on the YTMP3 home page, and pastes or enters the URL into an input box.  Once the URL is entered, the user clicks the "Convert Video" button, as shown in the figure below.

11

46.     YTMP3 then extracts the audio track from the YouTube video, converts it to an MP3 audio file, and copies the file to its servers.  Plaintiffs are informed and believe, and on that basis allege, that, in order to access the YouTube video and extract and copy the audio track, YTMP3 circumvents the technological measures that YouTube has implemented to control access to content maintained on its site and to prevent or inhibit illicit activities such as stream ripping.  Among other things, Plaintiffs are informed and believe, and on that basis allege, that YTMP3 employs a means to circumvent the YouTube rolling cipher technology described above, and other technological means that YouTube employs to protect content on its site.

47.     Having circumvented the protective technological measures implemented by YouTube, and having extracted and made a copy of the audio file associated with the relevant video, YTMP3 then presents the user with a "download" link.  When the user clicks that link, the YTMP3 service distributes the MP3 file audio directly from Defendants' servers to the user's computer, as demonstrated in the figure and arrow below.



48.     Plaintiffs are informed and believe, and on that basis allege, that in addition to distributing MP3 audio files to users, Defendants also make and store copies of the files on their servers for further distribution to other users.  Although the

YTMP3 webpage states that the service begins to extract the audio file associated with a YouTube video only after a user has entered a YouTube video URL and clicked the "Convert Video" button, and that the service "need[s] 3 to 4 minutes per video," in many instances – particularly in connection with very popular recordings – the service will deliver an MP3 audio file to the user almost immediately.  Plaintiffs are informed and believe that such files are immediately available because Defendants copy and store such files on their servers for expeditious distribution to later users.

49.     Defendants have no authorization or permission to copy, store, or distribute Plaintiffs' copyrighted sound recordings.  By providing this all-in-one infringement service, Defendants obtain a significant unfair advantage over competing legitimate music services, which pay for the right to distribute Plaintiffs' works, and thus deprive Plaintiffs of the revenues to which they are entitled for exploitation of their copyrighted works.

50.     Attached as Exhibit A is an initial list of a small sampling of the numerous and rapidly growing number of sound recordings to which Plaintiffs and/or their affiliated labels hold exclusive rights under copyright that have been and are being infringed by Defendants.  As set forth in Exhibit A, the copyright in each of these sound recordings is registered in the United States Copyright Office or is the subject of a completed application for registration of the recording.  Plaintiffs intend to amend the Complaint at an appropriate time to provide an expanded list of works infringed by Defendants.

51.     By providing and operating their service, Defendants are both directly infringing Plaintiffs' copyrights and are inducing and materially contributing to the infringement of Plaintiffs' copyrights by others and derive financial benefit from that infringement.  Defendants have the right and ability to supervise and stop the infringing activity – indeed, Defendant Matesanz has publicly admitted that he has (and has exercised) the ability to observe the content of the YouTube videos that are being "ripped" through YTMP3 – but they have taken no steps to stop the

infringement.  Rather, Defendants designed and continue to operate their service to optimize its usefulness for infringement.

52.     Defendants have also used one of Plaintiffs' own recordings to induce, entice, persuade, and cause users of the YTMP3 website to infringe Plaintiffs' copyrights.  In a blog posting announcing new functionality for the YTMP3 service (specifically, an "extension" for a Google Chrome browser), the single example that Defendants provided of a video that could be stream ripped through the YTPM3 website was the song "More" by the recording artist Usher, which is owned by Plaintiff Sony Music Entertainment:



53.     The motivation behind Defendants' illegal conduct is clear:  Defendants are receiving a direct financial benefit from the copyright infringement occurring on their service.  Defendants have received millions of dollars in ill-gotten gains, including by running revenue-generating advertisements on the site while committing massive copyright infringement.

## COUNT ONE

### (Direct Copyright Infringement)

54.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 53 as if fully set forth herein.

55.     Defendants, without authorization or consent from Plaintiffs, reproduce and distribute into the United States unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to those copyrighted sound recordings listed in Exhibit A hereto.  Such reproduction and distribution constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. §§ 106(1) and (3).

56.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

57.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

58.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

59.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

60.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT TWO

### (Contributory Copyright Infringement)

61.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

62.     As detailed above, users of the YTMP3 website are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute their copyrighted recordings.

63.     Defendants are liable as contributory copyright infringers for the infringing acts of users of the YTMP3 website.  Defendants have actual and constructive knowledge of the infringing activity of YTMP3's users. Defendants knowingly cause and otherwise materially contribute to these unauthorized reproductions and distributions of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

64.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

65.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

66.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

67.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

68.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be

compensated or measured in money.  Plaintiffs have no adequate remedy at law.

Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT THREE

### (Vicarious Copyright Infringement)

69.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 68 as if fully set forth herein.

70.     As detailed above, users of the YTMP3 website are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute their copyrighted recordings.

71.     Defendants are vicariously liable for the infringing acts of users of the YTMP3 website.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of YTMP3, and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights. Defendants are therefore vicariously liable for the infringement of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

72.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

73.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

74.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17

U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

75.   Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

76.   Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT FOUR

### (Inducement of Copyright Infringement)

77.   Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 76 as if fully set forth herein.

78.   As detailed above, users of the YTMP3 website are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute their copyrighted recordings.

79.   Defendants are liable under the Copyright Act for inducing the infringing acts of the users of YTMP3.  Defendants operate the YTMP3 website with the objective of promoting its use to infringe Plaintiffs' copyrights.  In addition, Defendants have failed to take any meaningful action to prevent the widespread and rapidly growing infringement by their users and in fact have taken affirmative steps to encourage, promote, and assist infringement by their users.

80.   Defendants knowingly and intentionally induce, entice, persuade, and cause users of the YTMP3 website to infringe Plaintiffs' copyrights in their sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.  Indeed, Defendants expressly promote to users the ease with which their service copies audio files:  "We will start to convert

the audiotrack of your videofile to mp3 as soon as you have submitted it and you will be able to download it.  Different from other services the whole conversion process will be performed by our infrastructure and you only have to download the audio file from our servers."

81.     Through these activities, among others, Defendants knowingly and intentionally take steps that are substantially certain to result in direct infringement of Plaintiffs' sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

82.     Despite their knowledge that infringing material is made available to users by means of YTMP3, Defendants have failed to take reasonable steps to minimize the infringing capabilities of the website.

83.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

84.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

85.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

86.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

87.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a

permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT FIVE

### (Circumvention of Technological Measures)

88.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 87 as if fully set forth herein.

89.     On information and belief, the YTMP3 service circumvents technological measures that YouTube has implemented to effectively control access to and prevent copying of works protected under the Copyright Act, in violation of 17 U.S.C. § 1201(a).  More specifically, Defendants' service descrambles a scrambled work, decrypts an encrypted work, or otherwise avoids, bypasses, removes, deactivates, or impairs a technological measure without the authority of Plaintiffs or YouTube.

90.     Defendants own, operate, provide, and offer to the public a service, YTMP3, which is primarily designed for the purpose of circumventing protection afforded by a technological measure, implemented by YouTube, that effectively protects the rights of Plaintiffs under the Copyright Act in sound recordings including but not limited to those listed in Exhibit A hereto, in violation of 17 U.S.C. § 1201(b)(1)(A).

91.     Defendants own, operate, provide, and offer to the public a service, YTMP3, which has only a limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure, implemented by YouTube, that effectively protects the rights of Plaintiffs under the Copyright Act in sound recordings including but not limited to those listed in Exhibit A hereto, in violation of 17 U.S.C. § 1201(b)(1)(B).

92.     Defendants own, operate, provide, and offer to the public a service, YTMP3, which is marketed by Defendants, and with Defendants' knowledge, for use in circumventing protection afforded by a technological measure, implemented by YouTube, that effectively protects the rights of Plaintiffs under the Copyright Act in

sound recordings including but not limited to those listed in Exhibit A hereto, in violation of 17 U.S.C. § 1201(b)(1)(C).

93.     Plaintiffs have been injured by Defendants' violations of 17 U.S.C. § 1201, including because Defendants' violations have permitted or facilitated the infringement of Plaintiffs' copyrighted works as described more fully herein.

94.     Defendants' conduct as described herein was and is willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

95.     As a direct and proximate result of Defendants' violations of 17 U.S.C. § 1201, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of circumvention.  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 1203(c)(2), Plaintiffs are entitled to their actual damages, including Defendants' profits from circumvention, in amounts to be proven at trial.

96.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5).

97.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting Defendants ongoing violation of the anti-circumvention provisions of 17 U.S.C. § 1201.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)     for a declaration that Defendants, both directly and secondarily, willfully infringe Plaintiffs' copyrights;

(b)     for such equitable relief under Titles 17 and 28 as is necessary to prevent or restrain infringement of Plaintiffs' copyrights and circumvention of YouTube's technological measures that effectively control access to Plaintiffs' copyrighted works, including:

i.      a preliminary injunction and a permanent injunction requiring that Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, (a) cease infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created; (b) cease circumventing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the circumvention of, any technological measure maintained by YouTube that effectively controls access to Plaintiffs' copyrighted works; and (c) surrender, and cease to use, the domain name of www.youtube-mp3.org, and any variant thereof owned or controlled by Defendants;

ii.      entry of an Order, pursuant to Sections 502 and 1203 of the Copyright Act (17 U.S.C. §§ 502, 1203), 28 U.S.C. § 1651(a), and this Court's inherent equitable powers,

(A)      enjoining Defendants and all third parties with notice of the Order, including any Web hosts, domain-name registrars, domain name registries, and proxy or reverse proxy services, and their administrators, from facilitating access to any or all domain names, URLs and websites (including, without limitation, www.youtube-mp3.org) through which Defendants infringe Plaintiffs' copyrights;

(B)      requiring domain name registries and/or registrars holding or listing Defendants' domain names and websites (including, without limitation, www.youtube-mp3.org) through which Defendants infringe Plaintiffs' copyrights to: (a) disable access to www.youtube-mp3.org and any related domain names specified by Plaintiffs through a registry hold or otherwise, and to make them inactive and non-transferable, and (b) transfer Defendants' domain names to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names and under Plaintiffs' ownership;

(C)     enjoining all third parties with notice of the Order from maintaining, operating, or providing advertising, financial, technical, or other support to YTMP3 and any other domain names, URLs, or websites through which Defendants infringe Plaintiffs' copyrights, including without limitation www.youtube-mp3.org; and enjoining all third-party distributors of applications, toolbars or similar software with notice of the Order from distributing any applications, toolbars, or similar software applications that interoperate with any domain names, URLs, or websites through which Defendants infringe Plaintiffs' copyrights, including without limitation www.youtube-mp3.org;

(c)     for statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 per infringed work, arising from Defendants' violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

(d)     for statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of circumvention or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 1203(c)(2), Plaintiffs' actual damages, including Defendants' profits from circumvention, in amounts to be proven at trial.

(e)     for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(f)     for prejudgment and post-judgment interest; and

(g)    for such other relief as the Court may deem just and proper.

Dated:  September 26, 2016

SIDLEY AUSTIN LLP


By:  /s/ Rollin A. Ransom
     Peter I. Ostroff
     Rollin A. Ransom
     Charlie J. Sarosy
     Attorneys for Plaintiffs

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Local Rule 38-1 and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Dated:  September 26, 2016

SIDLEY AUSTIN LLP


By: <u>/s/ Rollin A. Ransom</u>
Peter I. Ostroff
Rollin A. Ransom
Charlie J. Sarosy
Attorneys for Plaintiffs

COMPLAINT